IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION



LOLA SAMPLETON, etc., et al.,  }
                               }
    Plaintiffs,                }
                               }     CIVIL ACTION NO.
v.                             }
                               }     01-AR-2297-S
CSX TRANSPORTATION, INC., et   }
al.,                           }
                               }
    Defendants.                }

## MEMORANDUM OPINION

Before the court is the motion for summary judgment of defendants, CSX Transportation, Inc. ("CSX") and R.G. Durham ("Durham"). Plaintiffs are Lola Sample ("Sampleton"), as executrix of the estate of her deceased son, William Maurice Purifoy ("Purifoy"), and Tanesha Brookins ("Brookins"), a minor who sues through her mother and next friend, Bernice Brookins. Plaintiffs complain that a train operated by defendants negligently ran into the car in which Purifoy and Brookins were riding, killing Purifoy and injuring Brookins. Based on diversity, defendants removed the case to this court from the state court.

### Undisputed Pertinent Facts

After an early morning rendevous in the local cemetery, Purifoy attempted to drive his girlfriend, Brookins, home. Purifoy drove the car off of the road at a railroad crossing, snagging it on a rail. A short time later, a CSX train operated by Durham, as

engineer, and Paul Holtsford, Jr., as conductor, rounded the bend. Alabama requires trains approaching a crossing to sound their horns with two long whistles, a short whistle and then a long whistle, starting a quarter mile, or 1,320 feet, before the crossing. Ala. Code § 37-2-81. According to the locomotive's data recorder, the train started the whistle sequence between 1,202 and 1,138 feet before the crossing. Upon seeing the car on the track, Durham drastically increased the tooting of the horn. Durham realized that the car was not moving and that people were in or around the car, so he immediately activated the emergency brakes, which engaged brakes on all individual cars on the train. This was not enough to stop the 4,440 ton freight train in time to avoid calamity. There is no indication that the train was exceeding the speed limit. The train came to a rest 1,700 feet past the crossing, but only after tossing the car off the track and killing Purifoy. Applying the emergency brakes is an extraordinary action that can derail a train, possibly injuring or killing members of the train crew. At the time of the collision, neither Purifoy nor Brookins suffered from any infirmity of sight or hearing, but Purifoy had a blood alcohol level of .02 when he died.

### **Analysis**

Defendants admit that they did not sound the horn as early as the statute requires. Plaintiffs argue that this statutory

2

violation is negligence *per se*. (PL.'s Br. In Opp'n to Summ. J. at 4). In Alabama,

> [i]n order for a cause of action to be based on a statutory violation, the following requirements must be met: (1) the statute must have been enacted to protect a class of persons to which the plaintiff belongs, (2) the plaintiff's injury must be of the type contemplated by the statute, (3) the defendant must have violated the statute, and (4) the defendant's statutory violation must have proximately caused the plaintiff's injury.

*Jones v. B.P. Oil Co., Inc.*, 632 So. 2d 435, 441 (Ala. 1993) (internal citation omitted).

Plaintiffs are members of the class, namely, people at highway railroad crossings whom this statute was enacted to protect. Injuries resulting from train collisions are the very injuries contemplated by the statute. Defendants admit that they violated the statute. Plaintiffs have therefore satisfied the first three criteria. The only real question is whether plaintiffs can satisfy the fourth *Jones* criterion for maintaining a cause of action.

Brookins says that neither she nor Purifoy heard the horn until the train was right upon them, when it was too late to extricate themselves from the situation. Plaintiffs depend entirely upon the contention that by statue defendants should have sounded the horn earlier. **If plaintiffs did not hear the horn when the train was 1,100 feet away, or 900 feet or 400 feet, they certainly would not have heard it if defendants had sounded it when the train was 1,320 feet from the crossing, as the statute**

3

**required**.  Plaintiffs' argument, which can be summarized as "we did not hear the train when it was close, so the train operator should have sounded the horn when the train was farther away," defies logic and the laws of physics.  If plaintiff, Brookin, is to be believed, defendants' compliance with the statute would not have helped in the least, because plaintiffs would not have heard the horn anyway and would have been hit anyway.  Therefore, according to plaintiffs' own evidence, defendants' violation of the statute did not proximately cause injury and death in this case.  Although plaintiffs have met their burden of making out a *prima facie* case of **negligence**, they have failed to present substantial evidence of the other essential element, **proximate causation**.  It takes both negligence and proximate cause to establish tort liability.  One without the other takes a plaintiff nowhere.

If plaintiffs had offered proof of proximate causation, which they have not, defendants have pled, and have provided uncontradicted evidence for, the affirmative defense of contributory negligence.  Alabama law, under which this court operates while sitting in diversity, provides that contributory negligence is an absolute defense.  No reasonable finder of fact could conclude anything but than that Purifoy and Brookins were at least somewhat negligent, and that their own negligence proximately contributed to what tragically happened to them.  This undisputed fact provides an alternate reason for granting defendants' motion

for summary judgment.

In Alabama, contributory negligence precludes recovery if a defendant can "show that the party charged: (1) had knowledge of the condition; (2) had an appreciation of the danger under the surrounding circumstances; and (3) failed to exercise reasonable care, by placing himself in the way of danger." *Watters v. Bucyrus-Erie Co.*, 537 So. 2d 24, 24 (1989) (internal citations omitted). Defendants are irate in the present case because plaintiffs cite *Watters* while inserting the phrase "at the moment the incident occurred" to the second criterion. If this court limited its analysis to the "moment" when the train hit plaintiffs' car, this mini-debate about possible wool-pulling by plaintiffs might be of some moment as well as about some "moment." However, because the court considers the entire incident from when Purifoy snagged his car on the rail until the moment of impact, the presence, *vel non*, of plaintiffs' apocryphal phrase in their brief does not affect this court's conclusion.

There is no disputing the fact that Purifoy and Brookins had "knowledge of the condition," which, in this case, was that they were stuck on a train track. Defendants have therefore met the first *Watters* criterion.

Purifoy and Brookins presumably knew that trains run on rails. Furthermore, there is no evidence to show that either of them had any mental deficiency, at least not a deficiency so profound that

5

either could not formulate the syllogism that (a) trains run on rails, (b) they were stuck on a rail, and therefore (c) they were in danger of being run over by a train.  Defendants have met the second, "appreciation," criterion.

Plaintiffs are required to exercise reasonable care. Reasonable care requires that one stuck on a rail not so encumber his ability to see or hear that he is unable to detect an approaching train and to remove himself from danger.  Some might even argue that a diesel locomotive produces enough noise itself to alert everyone nearby of its presence, but the court does not rely on such a proposition.  This locomotive was sounding its horn, ringing its bell and burning its main headlight and something called "ditch lights."  This was enough for any reasonably alert person under plaintiffs' circumstances to see and hear the approaching train.  In fact, an unimpaired passenger in an automobile stuck on a track would, if acting as a reasonably prudent person should, exit the automobile immediately, even without hearing or seeing an approaching train.  Brookins testified that she and Purifoy were unable to see the train because their car's dome light was burning and they could not hear the train because of the noise Brookins generated by stepping on the accelerator after Purifoy told her to get behind the wheel.  These explanations for the occupants' shortcomings do not, at a matter of law, create a legitimate fact question for the jury.

6

Conceding arguendo the existence of a factual dispute over whether the dome light and car engine were so bright and loud respectively that they hid the train, the court finds that the only two possible logical explanations for Purifoy's death and Brookins' injuries are either, (1) that after they were caught on the track and failed to get off the track, the accident was inevitable, without regard to where or when the horn blew; or (2) that Purifoy and Brookins did, in fact, hear the horn, despite Brookins' sworn testimony to the contrary, and were themselves negligent by not thereafter reacting appropriately to get off the track. There is no evidence that they were frozen by fear. Plaintiffs cannot be heard to complain of the absence of a horn that they never heard, but that undisputedly sounded insistently and persistently.

To the extent that defendants are contending that plaintiffs had been drinking, the contention would present a legitimate issue for jury determination based on Purifoy's autopsy report if there were not a dispositive ruling under Rule 56 for other reasons. The fact of alcohol consumption does not constitute contributory negligence *per se*. It is not a factor in the court's calculus.

A separate order consistent with this opinion will be entered. DONE this 3rd day of July, 2002.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE